Lisa J. GIRDEN, Plaintiff–Appellant,

v.

SANDALS INTERNATIONAL, David Titus, Sandals Group, Sandals Antigua, Andrew E. Holm, Ltd., and Dickenson Bay Hotel Management, Defendants–Appellees.

Docket No. 00–7319.

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 2000.

Decided Aug. 21, 2001.

Carol A. Sigmond, New York, NY (Pollack & Greene, LLP, New York, NY, of counsel), for Plaintiff–Appellant.

David B. Newman, New York, NY (Jill L. Abitbol, Sonnenschein, Nath & Rosenthal, New York, NY, of counsel), for Defendants–Appellees.

Before CARDAMONE, PARKER, and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff Lisa J. Girden appeals from a judgment entered on February 22, 2000 in the United States District Court for the Southern District of New York (Knapp, J.), dismissing her complaint following an unfavorable jury verdict. In her complaint

plaintiff alleged she was sexually assaulted by a hotel employee, defendant David Titus, while on vacation at a Caribbean resort owned and operated by defendants Sandals Resorts International, Sandals Group, Sandals Antigua, Andrew E. Holm, Ltd., and Dickenson Bay Hotel Management. On appeal she contends the district court's jury instruction improperly required that for the jury to impose liability on defendants it had to believe her trial testimony to the exclusion of her contemporaneous accounts of the assault, which described the events quite differently.

■ For purposes of admissibility it is not required that a witness's account of an event be consistent with the same witness's other accounts of the same event. A witness may say one thing on one occasion and because of human fallibility speak differently about the same event later. Which version is believed is for the jury, not the judge, to decide. The right of the jury to disbelieve an earlier version in favor of a later one, in whole or in part, does not by itself make the earlier version irrelevant. Because the trial court's instruction to the contrary was in error, we vacate the judgment and remand the case for a new trial.

## BACKGROUND

### Facts

In August 1996 plaintiff Girden went with her then fiancé, David Wittenberg (now her husband), to the island of Antigua in the Caribbean for a week's holiday. They stayed at a friend's condominium. Before going on this holiday plaintiff had read about defendant Sandals Resorts International, a hotel chain, in print advertisements in the *New York Times* and learned that Sandals offered its guests a wide variety of water sports. While in Antigua on August 28, Girden's 37th birth-day, plaintiff and her fiancé went to spend the day at defendant's resort. They paid $150 for day passes entitling them to use all the resort's facilities from 10 a.m. to 6 p.m. This included water sports, lunch, use of the tennis courts, hot tubs, windsurfing, etc.

After lunch that day, while her fiancé was scuba diving, Girden went to take a windsurfing lesson. The resort staff directed her to defendant David Titus, a resort employee on the water staff, who told her the wind was too strong for windsurfing. He said he would teach her instead to sail a sunfish. During the lesson, Titus navigated the small nine-foot long, three-foot wide boat, built to hold two people, out into the open sea. They went far enough so they were out of sight of other people engaging in water sports. At that point, according to Girden, Titus sexually assaulted her.

During the assault Girden complained to Titus of severe cramps due to a pre-existing abdominal condition—known as ulcerated colitis—that, she asserted, was triggered by the assault. Girden finally convinced Titus to return the boat to shore by explaining her condition to him and by promising not to report the incident. Once back on shore, Girden waited for her fiancé to return from scuba diving, and then reported the incident to Ruth Horsford, a manager at the Sandals Antigua hotel. At management's request, she also faxed the hotel the next day a written account of the incident, just before she left Antigua. A week after the assault, in a letter dated September 5, 1996, Titus was fired by defendant Sandals Antigua for "immoral conduct."

In July 1997 Girden filed the instant lawsuit in New York State Supreme Court against Sandals Resorts International and Titus, seeking $10 million in damages resulting from the alleged sexual assault,

citing her emotional trauma as well as the exacerbation of her abdominal condition.[1] Defendants removed the suit to federal court in the Southern District of New York based on diversity jurisdiction. Plaintiff subsequently filed an amended complaint to include all of the defendants involved in this appeal. Following discovery, the suit went to a jury trial before Judge Knapp from February 7 to February 15, 2000. Defendant Titus did not appear at trial. The sole evidence of his misconduct was Girden's accounts of the incident, as given verbally and by fax to the hotel management immediately after the incident, and in her trial testimony. These accounts are at the heart of plaintiff's appeal.

## Trial Proceedings

### A. *Incident Reported to Resort Management*

At trial, Ruth Horsford's written report of Girden's initial complaint of the assault was read into evidence and was paralleled by Horsford's own testimony. According to Horsford, Girden told her that Titus had slowed the boat while out at sea, had tried to kiss her three times, and had tried to put his tongue in her mouth on the third attempt. Horsford also indicated that during her conversation with Girden following the assault, Girden was not crying and appeared to be "very calm."

Girden's written account of the incident, faxed to the hotel the next day, was also produced at trial. According to that account, Titus asked plaintiff to sit closer, told her how pretty she was, slowed the boat, and then hugged and kissed her, put his hand on her thigh, and held her close to him. She grew nervous because of their distance from shore and their inability to be seen. He kissed her twice, and tried to put his tongue in her mouth on the second attempt. Once safely back on land, Girden stayed in the shallow water near the shore to wait for her fiancé because Titus kept approaching her to offer her another ride. When her fiancé returned from scuba diving, she filed her complaint with Horsford, and she described herself as "very calm but very teary" in telling Horsford her story.

### B. *Incident Testified to at Trial*

In her testimony at trial, Girden described Titus' conduct in terms more egregious and offensive than she had earlier. According to this account, once out at sea, Titus touched her feet with his, moved to sit next to her (purportedly to fix the sail), and then reached over and kissed her. When Girden pushed him away and asked him to stop, Titus placed his arm around her back, pulled her towards him, and kissed her again, this time placing his tongue in her mouth. Titus then took his left hand from her leg, moved it inside her bathing suit, and held his fingers inside her vagina for about a minute. He also brought his other hand around and inside the top of her bathing suit. She said she could not call for help since she was out of sight and hearing of other people. It was too far to swim for shore, and she was afraid to fight Titus. Even after Girden persuaded him to return to shore, he continued to touch her leg and hold her wrist. Back on shore, Girden ran to the bathroom, where she vomited and experienced rectal bleeding. Because Titus was still following her after she left the bathroom, she went into the shallow water to wait for her fiancé to return.

---

1. In addition to sexual assault, Girden's complaint also asserted separate causes of action for unlawful imprisonment and deprivation of civil rights. The record before us does not indicate what became of these other claims, but the parties' appellate briefs describe the action only as one for sexual assault and, accordingly, we will treat it that way.

Plaintiff acknowledged at trial that the first time she related the full details of her story to anyone from the Sandals Resorts hotel was upon being asked specific questions at her deposition in this litigation. She also conceded that, when called by another resort manager a few days after her return home and asked if she had anything to add to her statement, she declined. Girden explained, however, that Horsford had asked only general questions to which she gave general answers and that the interview had been conducted in a hotel lobby that afforded little privacy during her recital of the events. She stated further that initially she did not know who would see her complaint or where exactly the inquiry might lead. To bolster her trial testimony, Girden called as witnesses her husband, a close friend to whom she had told the full story of the incident shortly after her return home, her colon rectal surgeon, and an expert psychiatric witness.

### C. *Defense Trial Rebuttal*

In rebuttal, defense counsel pointed out inconsistencies between Girden's various accounts of the incident and between her recollection and Horsford's of the circumstances at the reporting of her initial complaint. The defense noted that Girden waited to see her treating physicians until four or five weeks after her return home. Relying on the testimony of its own expert psychiatric witness, defense counsel also suggested that Girden's symptoms of emotional and physical stress could have been produced by events in her life rather than the alleged assault.

2. The interrogatory that was subsequently given to the jury stated

(1) Has the plaintiff established by a preponderance of the evidence that the events occurring on August 28, 1996 were substantially as she described them in her trial testimony?

### D. *Trial Court's Charge*

In charging the jury the district judge described the nature of Girden's claim and her burden to establish liability by reading from a prepared interrogatory that was subsequently handed to the jury to guide its deliberations:

The first question that's going to be asked of you: Has the plaintiff established by a preponderance of the evidence—and I told you what that means—that the events occurring on August 28, 1996 were *substantially as she described them in her trial testimony?* "Has the plaintiff established by a preponderance of the evidence that the events occurring on August 28, 1996 were *substantially as she described them in her trial testimony?*" The answer is yes or no. I don't think I need elaborate on that.

"If your answer is no, you have completed your endeavors and should report to the Court.["] If you answer that question no, that's the end of the case. "If the answer is yes, you should continue with the following questions" [pertaining to the calculation of damages].

Tr. dated Feb. 15, 2000, at 18–19 (emphases added).[2] After discussing damages, the district judge returned to the threshold question of liability saying, "Once you answer the first question 'yes,' that was really the whole issue being tried all along." *Id.* at 20. Plaintiff took no formal exception to these instructions during the charge.

ANSWER "YES" OR "NO." _____

If the your answer [sic] is "No" you have completed your endeavors and so should report to the Court. If your answer is "Yes" you should continue with the following questions.

When the jury returned its verdict, the jurors answered the threshold question of liability in the negative. Accordingly, the trial judge directed that judgment be entered dismissing Girden's complaint. From the dismissal of her complaint, plaintiff takes this appeal.

## DISCUSSION

### I Objection to Charge Preserved

As noted, Girden's principal contention on appeal is that on the question of whether liability could be imposed on defendants, the trial court, both in its charge and in the interrogatory it gave the jury, improperly told the jury it could only credit that version of events given in her trial testimony in order to reach the issue of damages. When the trial judge read the proposed question at the charging conference, Girden's counsel called this point to the court's attention by arguing that liability would also be proper if "the jury simply believes that the only thing that occurred is what was told to Sandals during the interview by Ms. Horsford." Tr. dated Feb. 10, 2000, at 584. The trial court rejected this contention, reasoning that "[h]er claim is what she said here, not some other claim that she might have said." Id. at 585. When Girden's counsel renewed the objection in the robing room on the morning the jury was charged, the district court responded, "You have taken that position and I've explained mine.... You made that exception before." Tr. dated Feb. 15, 2000, at 2–3.

Rule 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict." Fed.R.Civ.P. 51. It follows from this Rule's provision that a party who fails to object to a jury instruction at trial ordinarily waives consideration of any claim relating to that charge on appeal. But Rule 51 must be read in conjunction with Fed.R.Civ.P. 46, which states that "[f]ormal exceptions to rulings or orders of the court are unnecessary," as long as a party makes known its objection and the basis for it at the time the district court rules. As such, a failure to object after a charge is given is excused where, as here, a party makes its position clear—plaintiff twice argued her point to the district court, which rejected it—and the trial judge is not persuaded.

A further attempt to object need not be undertaken because it would be without any reasonable possibility that the trial court would change its mind. *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 30 (2d Cir.1997); *Anderson v. Branen*, 17 F.3d 552, 556–57 (2d Cir.1994); *Ginett v. Computer Task Group, Inc.*, 11 F.3d 359, 361 (2d Cir.1993); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 177–79 (2d Cir.1992); *Krause v. Bennett*, 887 F.2d 362, 368–69 (2d Cir.1989); *see also Keen v. Overseas Tankship Corp.*, 194 F.2d 515, 519 (2d Cir.1952) (L.Hand, J.). In such a case, the party satisfies the purpose of the exception requirement by bringing the objection to the district court's attention and giving that court an opportunity to correct any errors it may have made before delivering the charge to the jury. *Ginett*, 11 F.3d at 361 (citing Fed.R.Civ.P. 46); *Krause*, 887 F.2d at 369 (citing Fed.R.Civ.P. 51). *See generally* 9 James Wm. Moore et al., Moore's Federal Practice §§ 46.03[2], 51.12[2][a] (3d ed.2000).

Hence, notwithstanding the fact that plaintiff took no formal exception at the time the jury was charged, plaintiff preserved her objection for purposes of this appeal.

### II Merits

Before turning to the merits, we comment briefly on the standard of review

that obtains on this appeal. We review a district court's jury instruction *de novo* to determine whether "the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir.1998). A new trial is required if, considering the instruction as a whole, the cited errors were not harmless, but in fact prejudiced the objecting party. *Id.*

### A.  *Instruction Was Erroneous*

■■■ " 'The purpose of jury instructions is to give the jury a clear and concise statement of the law applicable to the facts of the case.' " *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir.1995) (quoting *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985)); *accord Hanover Fire Ins. Co. v. Sides*, 320 F.2d 437, 444 (5th Cir.1963); 9 Moore et al., *supra*, § 51.10[1], at 51–11. Thus, "[a] litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value." *Anderson*, 17 F.3d at 557; *accord Kelber v. Joint Indus. Bd. of Elec. Indus.*, 27 F.3d 42, 46–47 (2d Cir.1994); *Carvel Corp. v. Diversified Mgt. Group, Inc.*, 930 F.2d 228, 230 (2d Cir.1991). And, when giving such an instruction, the trial court must enunciate the standard of liability in a fashion that adequately sets forth the essential elements of the cause of action. *E.g., Hendricks v. Coughlin*, 942 F.2d 109, 113–14 (2d Cir.1991); *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533–34 (2d Cir.1991).

■■■ In the present case, Girden's claim was one for sexual assault pursuant to New York common law. Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993) (collecting authorities); *accord Charkhy v. Altman*, 252 A.D.2d 413, 414, 678 N.Y.S.2d 40 (1st Dep't 1998); 6A N.Y. Jur.2d *Assault—Civil Aspects* § 1 (1997). "It does not matter that the penal law lays down specific elements for the various offenses or degrees of offenses that entail unwanted touching. . . . In the civil context . . ., the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *United Nat'l Ins. Co.*, 994 F.2d at 108; *accord* 6A N.Y. Jur.2d *Assault—Civil Aspects* § 2. Thus, "a rape is an undisputed assault and battery" under New York law. *United Nat'l Ins. Co.*, 994 F.2d at 108.

■■■ Although the district court instructed the jury on Girden's claim of sexual assault, it failed to describe to the jury the elements of her claim as just set forth. Instead, the trial court simply asked the jury whether Girden had established by a preponderance of the evidence "that the events occurring on August 28, 1996 were substantially as she described them in her trial testimony." Tr. dated Feb. 15, 2000, at 18. This instruction was consistent with the court's apparent view that mere unwanted kissing and touching (as described in Girden's earlier accounts of the incident) did not constitute a tort, and that the imposition of liability therefore would have required the jury to credit the more lurid account of the incident related by Girden in her trial testimony.

It was error for the trial court not to set forth the elements of Girden's assault cause of action in its instruction to the jury. By hinging liability entirely on Girden's trial testimony rather than on the elements of her claim, the assault instruction precluded the jury from imposing liability on the basis of her contemporaneous

accounts of the alleged attack. Yet it seems plain that either of those prior accounts, if credited by the jury, would have sufficed to establish liability for assault under New York law, under the above described standards. Indeed, New York courts have recognized a civil cause of action for unwanted kissing of the sort complained of in Girden's earlier accounts. *See Rothschild v. Weingreen,* 121 N.Y.S. 234, 234–35 (N.Y.App.Div.1910); *Van Voorhis v. Hawes,* 12 How. Pr. 406, 1855 WL 6342 (N.Y. Sup.Ct. N.Y. County 1855).

When Girden's counsel raised essentially this point at trial, the district court rejected it, reasoning that "[h]er claim is what she said here, not some other claim that she might have said." Tr. dated Feb. 10, 2000, at 585. But because the prior accounts, if credited by the jury, would have supported liability under New York law, we cannot agree with the trial court that these accounts were immaterial and of no independent consequence to Girden's cause of action. *See* Fed.R.Evid. 401 (evidentiary relevance standard); *United States v. Diaz,* 878 F.2d 608, 614 (2d Cir.1989) (same). Girden's claim was not that Titus' alleged attack conformed to whatever account she might give in her trial testimony, but that the attack as in fact perpetrated against her constituted assault under New York law. *See* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.04[3][c][i], at 401–34 (Joseph M. McLaughlin ed., 2d ed.1999) (materiality of evidence must be assessed in light of complaint, broadly construed) (citing Fed.R.Civ.P. 15(b)). Although Girden's prior accounts of the attack did not furnish the same degree of detail with respect to the egregious conduct she described in her trial testimony, those earlier accounts were clearly material to her legal claim.

■■■■ To the extent that the challenged jury instruction rested on the determination that the evidence of Girden's prior accounts was of no independent consequence to a finding of liability, that determination was arbitrary and irrational. Hence, we conclude the instructions misled the jury with respect to the correct legal standard to apply in evaluating the proof on the issue of defendants' liability. New York courts make this point persuasively.

[A] charge which in effect instructs a jury that it must accept in its entirety the story of one or another of two sets of witnesses in a conflict is erroneous, for jurors have the latitude to analyze the evidence in a case, to accept part of it and to reject part of it, and to draw any inferences from the testimony, exhibits, and circumstances that they deem reasonable.

A charge that a jury must find in a certain way if it should believe a certain witness, is ordinarily improper as preventing the jury from construing the evidence and determining the facts which it establishes.

105 N.Y. Jur.2d *Trial* § 431 (1992) (citing *Callahan v. N.Y. Rys. Corp.,* 235 A.D. 219, 220–21, 256 N.Y.S. 779 (1st Dep't 1932)); *accord Weyant v. Okst,* 101 F.3d 845, 855 (2d Cir.1996) ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."); *see also United States v. Barrett,* 937 F.2d 1346, 1349 (8th Cir.1991) ("[I]t is within the jury's province to weigh a witness's credibility; the jury was made aware of the various inconsistencies in the [sex abuse] victim's numerous statements.").

### B. *Erroneous Instruction Was Not Harmless*

■■■■ Viewing the record as a whole, we cannot say that the erroneous instruction

was harmless, since it "was given in a critical portion of the instructions" regarding liability, *Delima v. Trinidad Corp.*, 302 F.2d 585, 587 (2d Cir.1962) (Marshall, J.), and had a likely effect on the verdict by failing to inform the jury adequately of the applicable standard of liability, *see Holzapfel*, 145 F.3d at 525 ("The jury might well have reached a different result had appropriate instructions been given it."). In a sexual assault case, a plaintiff understandably may be particularly reluctant to come forward immediately with a full account of what happened, and by the same token a jury reasonably may question whether the plaintiff accurately remembered all of the facts when giving a later, more elaborate account of the incident. *Compare Matthews v. Rakiey*, 54 F.3d 908, 917–18 (1st Cir.1995) (on habeas review of state rape conviction, rejecting claim that counsel was ineffective for not sufficiently exploring victim's failure to report rape immediately), *with id.* at 919–20 (Bownes, J., dissenting) (dissenting on this point).

■■■ Given that such a case will often turn on the jury's assessment of the plaintiff's recollection of the assault, it is imperative that the liability instruction in the jury charge focus not on the accuracy of any single account given by the plaintiff, but rather on whether the facts of the incident as found by the jury warrant the imposition of liability under the substantive law governing the plaintiff's claim. Since believing any of plaintiff's accounts would allow for a finding of liability, this judgment must be vacated and the case remanded for a new trial.

## C. *Vicarious Liability*

In remanding this case for retrial, we take no position on the corporate defendants' liability for Titus' alleged conduct, a matter which was hotly contested by the parties during the trial. It appears that, after many colloquies with counsel, the district court held that it would not charge the jury that defendants may have been negligent in their hiring, supervision or training, but that it would proceed with the theory of *respondeat superior* such that the corporate defendants would be vicariously liable for any of Titus' allegedly improper conduct. The trial court concluded that under New York law and based on the record in the case, it could determine as a matter of law that the corporate defendants were responsible for Titus' actions with regard to plaintiff to the extent the jury believed her testimony.

As the prevailing parties at trial below, the corporate defendants have understandably not appealed the district court's ruling on this matter. That issue is therefore not before us. Nonetheless, in the interest of judicial economy, we think it prudent to bring certain relevant principles of New York law to the district court's attention on remand.

■■■ In the first place, an employer is responsible for an employee's intentional tort only when the employee was acting within the scope of his or her employment when he or she committed the tort. *Riviello v. Waldron*, 47 N.Y.2d 297, 302–03, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). Whether an employee was acting within that scope at a particular time requires a fact-intensive inquiry. *Id.* at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278. The ultimate determination of this issue is ordinarily for the jury, although it can be made as a matter of law in some instances. *Buck v. Zwelling*, 272 A.D.2d 895, 896, 707 N.Y.S.2d 281 (4th Dep't 2000); *Patterson v. Khan*, 240 A.D.2d 644, 644–45, 659 N.Y.S.2d 90 (2d Dep't 1997). In many New York cases, courts have held as a matter of law that an employer was not responsible for a sexual assault committed by an employee because the attack was

outside the scope of the employee's duties. *Cornell v. State,* 46 N.Y.2d 1032, 1033, 416 N.Y.S.2d 542, 389 N.E.2d 1064 (1979); *Curtis v. City of Utica,* 209 A.D.2d 1024, 1025, 620 N.Y.S.2d 24 (4th Dep't 1994); *Nicollette T. v. Hosp. for Joint Diseases/Orthopaedic Inst.,* 198 A.D.2d 54, 54–55, 603 N.Y.S.2d 146 (1st Dep't 1993); *Murray v. Research Found. of State Univ. of N.Y.,* 184 Misc.2d 453, 456, 707 N.Y.S.2d 816 (N.Y. Sup.Ct. Monroe County 2000).

Again, we take no position on how these principles should be applied to the present case. But should defendants contest this issue on remand, the district court should take these principles into account in resolving the matter.

### III   Remaining Contentions

Girden raises two additional points on appeal. We discuss them briefly as guidance for the district court on remand. Because plaintiff raised neither point below, we review only for " 'plain error' that may result in a miscarriage of justice, or [in] obvious instances of . . . misapplied law." *Simms v. Vill. of Albion,* 115 F.3d 1098, 1109 (2d Cir.1997) (jury instructions); *see Stathos v. Bowden,* 728 F.2d 15, 19 (1st Cir.1984) (Breyer, J.) (receipt of verdict before answering jury's question reviewed for plain error). A plain error is one that affects substantial rights, and such error merits reversal only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)); *accord United States v. Ben Zvi,* 242 F.3d 89, 95 n. 1 (2d Cir.2001).

### A.   *The Charge on Witness Reliability*

First, Girden objects to that portion of the jury charge on the evaluation of witness testimony, in which the district judge cited her own trial testimony as an example. In particular, Judge Knapp stated that "the problem you [the jurors] have in evaluating [Girden's] testimony is deciding whether, over the period of years since this event happened, her continuing thoughts about it changed until by the time she got on the stand she was truthfully, from her point of view, remembering things differently than they actually happened." Tr. dated Feb. 15, 2000, at 15–16. We have cautioned that "the choice of an example too close or analogous to the facts of the case on trial is likely to be more prejudicial than 'helpful' and is quite unnecessary when other clearly non-prejudicial examples are available." *United States v. Gleason,* 616 F.2d 2, 14 (2d Cir. 1979); *see United States v. Salameh,* 152 F.3d 88, 142–43 (2d Cir.1998) (per curiam); *United States v. Dizdar,* 581 F.2d 1031, 1037 (2d Cir.1978).

But here, as in the cited cases, the district judge ameliorated possible prejudice by making curative remarks both before and after the challenged instruction. *See Salameh,* 152 F.3d at 143; *Gleason,* 616 F.2d at 14–15; *Dizdar,* 581 F.2d at 1037; *see also United States v. Desimone,* 119 F.3d 217, 227 (2d Cir.1997) ("Both the timeliness of a trial court's curative measures and the relative weakness of the [opponent's] case may be relevant to the prejudice suffered by a [party] as a result of an erroneous instruction."). Thus, the judge prefaced the challenged instruction with the statement, "And bear in mind what I say about it [*i.e.,* Girden's testimony] doesn't mean anything to you, I'm just illustrating my point." Tr. dated Feb. 15, 2000, at 15. Similarly, the judge reiterated at the conclusion of his example, that "my opinion about anything is of no consequence to you and any indication I may

give you is to be ignored." *Id.* at 16. As a result, although the district judge's selection of Girden's testimony as an example was not well advised, there was no plain error.

### B. *Premature Receipt of the Verdict*

Second, Girden argues that the district judge erred in receiving the jury's verdict without first answering certain questions the jury had raised. On the last day of trial, the jury retired for deliberations at 12:25 p.m. and submitted five questions to the court about 15 minutes later. At the time, however, the district judge and counsel were at lunch. At 1:50 p.m., before the jury's questions had been answered, the jury sent another note that read, "Thank you, but we do not need any further answers to the questions we submitted. The jury has reached a verdict." At 2:15 p.m., the district court received the jury's verdict without first answering the five questions raised earlier. Girden contends that such receipt of the verdict was premature and constituted plain error.

■ We disagree. The second and third questions presented by the jury asked about distinguishing among the different defendants as to liability, and about an employer's liability for the acts of an employee. Both questions were mooted by the jury's negative response to the first question on the interrogatory, which indicated the jury had found *none* of the defendants liable. Moreover, the latter question was not pertinent, since the district court had earlier ruled as a matter of law that the corporate defendants could be held vicariously liable because Titus had been acting within the scope of his employment.

Finally, the jury's remaining questions asked to see a copy of the jury interrogatories, Titus' termination letter, and Horsford's written report, all of which had al-

ready been provided to the jury or read aloud into the record during trial. There is no reason to believe therefore that the verdict was tainted by confusion on the part of the jury, and Girden suffered no prejudice from the decision to receive the verdict without first answering the jury's questions. *See Stathos,* 728 F.2d at 19 (no plain error where "the jury's question suggests no serious or prejudicial confusion").

## CONCLUSION

Accordingly, for the reasons set forth above, the judgment of the district court is vacated and the case is remanded for a new trial not inconsistent with this opinion.