308 F.3d 169
 LNC INVESTMENTS, INC. and Charter National Life Insurance Company, Plaintiffs-Appellants,
v.
NATIONAL WESTMINSTER BANK, N.J., First Fidelity Bank, N.A. New Jersey and United Jersey Bank, Defendants-Appellees.
 Docket No. 00-9419.
 United States Court of Appeals, Second Circuit.
 Argued: January 7, 2002.
 Decided: October 17, 2002.
 
 Raymond Fitzgerald, Butler, Fitzgerald & Potter, New York, NY, for the appellants.
 Daniel A. Pollack, Pollack & Kaminsky, New York, N.Y. (Martin I. Kaminsky, Edward T. McDermott, on the brief), for appellees National Westminster Bank, N.J. and United Jersey Bank.
 Richard W. Hill, McCarter & English, LLP, Newark, NJ (Seth T. Taube, on the brief), for appellee First Fidelity Bank, N.A.
 Before JACOBS, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 The parties to this appeal pay our Court a second visit, following a jury verdict for defendants, who are trustees for a series of indentures. The plaintiffs, holders of those indentures, claim that the trustees failed to exercise their powers prudently to protect the value of the collateral securing the indentures after the debtor filed for bankruptcy. The judgment now on appeal followed on remand from this Court after we vacated the results of the previous trial — also a verdict for defendants — due primarily to jury instructions which erroneously required the plaintiff bondholders to prove reliance as part of their cause of action. See LNC Invs., Inc. v. First Fidelity Bank, 173 F.3d 454 (2d Cir.1999). On this trip, the plaintiffs ask this Court to decide a difficult and unsettled issue of bankruptcy law — specifically, whether a creditor whose loan is secured with collateral in the possession of the debtor and who asks the bankruptcy court either to lift the automatic stay with respect to taking possession of the collateral or to direct the debtor to provide additional "adequate protection" of that collateral, and whose motion is denied by the bankruptcy court, is nevertheless entitled (as he or she would be if the motion were granted) to an "administrative superpriority" claim for any amount by which the creditor's claim becomes unsecured by virtue of the decline in the value of the collateral. As we informed the parties on the first appeal, however, the answer to this question pressed by plaintiffs is relevant only to the issue of causation — i.e., whether, if the trustees had made a lift stay/adequate protection motion immediately upon the bankruptcy filing, the making of such a motion would have resulted in a greater recovery for the bondholders — and not to the sole issue on which the jury found for defendants — namely, whether the trustees were imprudent in not making such a motion earlier. Thus, despite the able arguments of both sides on the bankruptcy issue, we decline the invitation to decide it. Because this issue is the sole ground on which the plaintiffs have chosen to rest their appeal, we affirm.
 
 
 BACKGROUND
 
 
 2
 The underlying facts in the dispute are laid out in detail in our prior opinion, familiarity with which is assumed. Briefly, this case arises from the events surrounding the struggles of Eastern Airlines ("Eastern") to remain viable, culminating in its filing for bankruptcy protection in 1989 and its cessation of operations in 1991. On November 15, 1986, Eastern entered into a sales/leaseback transaction involving used operating aircraft with a secured equipment trust (as far as is legally relevant here, a secured loan with the aircraft as collateral), of which defendant First Fidelity was the collateral trustee. Id. at 457-58. The equipment trust (the "Trust") issued three series of equipment trust certificates (the "Bonds"); defendants United Jersey Bank and National Westminster Bank (together with First Fidelity, the "Trustees"), were designated indenture trustee of the second and third series, respectively. Eastern was obligated under the terms of the trust indenture (the "Indenture") to make lease payments sufficient to cover the principal and interest payments on the Bonds as they came due. Plaintiffs LNC Investments, Inc. and Charter National Life Insurance Company (the "Bondholders") purchased second- and third-series Bonds at various times between 1989 and 1994. Id. at 459.
 
 
 3
 Eastern's voluntary Chapter 11 filing on March 9, 1989 not only constituted a default under the terms of the Indenture — thus triggering the Trustees' duty prudently to exercise their powers under both the Indenture and the Trust Indenture Act ("TIA"), 15 U.S.C. § 77ooo(c)[1] — but also prevented the Trustees from taking possession of the collateral aircraft due to the automatic stay provisions of the Bankruptcy Code (the "Code"), 11 U.S.C. § 362(a). At the time of Eastern's petition, the appraised value of the collateral aircraft exceeded the outstanding principal on the Bonds (i.e., there was an "equity cushion") by approximately $228 million. LNC, 173 F.3d at 458. The declining fortunes of Eastern and the airline industry in general, however, caused the collateral's value to fall so that, by the time Eastern ceased operations and released the collateral to the Trustees in January 1991, there was insufficient value in the aircraft to satisfy the Bonds.
 
 
 4
 The Bondholders brought suit in the district court in October 1992, principally alleging that the Trustees had failed in their obligation to exercise prudence on behalf of the Bondholders, in violation of both the TIA and the terms of the Indenture. Specifically, plaintiffs primarily alleged that the Trustees, immediately upon Eastern's Chapter 11 filing, should have asked the bankruptcy court either to lift the automatic stay under § 362(d) of the Code or to issue an order under § 363(e) of the Code[2] that Eastern provide "adequate protection"[3] of the collateral. The Bondholders assert that the filing of such a motion, regardless of its disposition, would have entitled the Trustees to an "administrative superpriority" claim under § 507(b) of the Code,[4] to the extent that the outstanding principal on the Bonds exceeded the value of the collateral. Such a superpriority claim would have placed the Trustees ahead of all other unsecured creditors and, as the Eastern estate was administratively solvent (or so the Bondholders claimed), this § 507(b) claim would have resulted in at least a partial recovery of the unsecured amount left owing on the Bonds. Although the Trustees did file an adequate protection motion on November 14, 1990, plaintiffs claim that this filing came too late, a result of the Trustees' allegedly imprudent failure to monitor the declining value of the collateral more frequently. LNC, 173 F.3d at 459.
 
 
 5
 The Trustees dispute the plaintiffs' reading of § 363(e) and § 507(b) and plaintiffs' contentions regarding the lateness of the filing. In the Trustees' view, the Code grants a § 507(b) superpriority claim only if the adequate protection motion results in the bankruptcy court's ordering of additional protection, and the trustees contend that the court would not have ordered such protection as long as there was an equity cushion. Further, the defendants claim that there was a good reason not to file the motion prematurely — namely, that once apprised of the fact that there was a significant equity cushion in the collateral, the bankruptcy court likely would have allowed Eastern to invade that cushion for operating capital. Defendants also claim that at the time they filed the adequate protection motion in November 1990, there was still a positive, albeit small, equity cushion, and that this fact showed that they had monitored the collateral value with due care.
 
 
 6
 The case proceeded to trial before Judge (now Chief Judge) Michael B. Mukasey in March 1998. LNC, 173 F.3d at 459-60. Prior to trial, Judge Mukasey had ruled — although with some reservations — that, in accordance with the plaintiffs' view of the Code, the making of a lift stay/adequate protection motion would, by itself, have resulted in a superpriority claim. When asked by the plaintiffs to so instruct the jury, however, Judge Mukasey refused plaintiffs' request and instead instructed the jury that the superpriority question "was not clearly resolved and ... was the subject of disagreement among perfectly competent and diligent bankruptcy attorneys" and that the jury was "entitled to take this uncertainty in the law into account when [it] decide[d] whether the defendant banks acted as prudent persons in this case." Id. at 460. The jury returned a special verdict finding that the defendants had breached their duty of prudence, but that this breach did not proximately cause the plaintiffs' injury. Id.
 
 
 7
 On appeal, we vacated and remanded for a new trial because the district court's instructions to the jury improperly required the plaintiffs to prove reliance as an element of their claims. Id. at 460-63. We also held that, with respect to causation, the question of the effect of making an adequate protection motion on the availability of a superpriority claim was a legal one which the district court, not the jury, should have decided. Id. at 468. With respect to whether the Trustees were prudent in not filing the motion earlier, however, we stated that "[i]nsofar as the jury's consideration of the unsettled state of the law was limited to the question whether the Trustees' delay in making the Motion was prudent, the charge was undoubtedly correct." Id. We directed the district court on remand to "therefore decide the [§ 507(b)] issue and determine what type of charge on superpriority and causation is appropriate in light of any factual disputes remaining in the new trial." Id.
 
 
 8
 On remand, the case was reassigned to Judge Charles S. Haight. In an opinion and order dated March 31, 2000, Judge Haight held that the Trustees' interpretation of § 507(b) of the Code was the correct one. That is, in answer to the question of whether
 
 
 9
 a secured creditor's claim is entitled to "superpriority" status if the creditor files a motion with the bankruptcy court for an order lifting the stay of proceedings against the debtor or, in the alternative, for an order of adequate protection, the bankruptcy court denies any relief, and the creditor's collateral subsequently proves inadequate to cover its claim,
 
 
 10
 LNC Invs., Inc. v. First Fidelity Bank, 247 B.R. 38, 40 (S.D.N.Y.2000), the district court answered in the negative and stated that it would "so instruct the jury," id. at 50.
 
 
 11
 Retrial of the case began on September 11, 2000. On September 25, during a conference to discuss the jury charge, the Trustees requested that the court delete Judge Mukasey's original language describing the unsettled state of the law regarding § 507(b). The Trustees based this request on two grounds: (1) that unlike in the prior trial, there had been no evidence presented tending to demonstrate the unsettled state of the law — indeed, that the defendants had been precluded by the court from eliciting such evidence; and (2) that, more fundamentally, the state of the law was not a factual question, but a legal one — i.e., "the law is the law." (Tr. 1866). Accordingly, the Trustees requested that the jury be instructed solely that the making of a lift stay/adequate protection motion would not have resulted in a superpriority claim.
 
 
 12
 Counsel for the Bondholders objected to removal of this language, noting, among other things, this Court's approval of Judge Mukasey's charge with respect to the issue of prudence. The Bondholders argued that to fail to instruct the jury that the effect of a lift stay/adequate protection motion was uncertain at the time would be to "eliminat[e] something that [the Trustees] could have known. It is not a hindsight issue; it is a current-knowledge issue." (Tr. 1865). As the Trustees stated, this would leave the Bondholders an argument that "since it was uncertain, we should have made the motion." (Tr. 1866).
 
 
 13
 Judge Haight noted the apparent reversal of positions taken by the parties vis-à-vis the prior trial, but stated that based on this Court's prior opinion he was inclined to leave the "unsettledness" language in the charge.[5] As Judge Haight stated, "It seem[s] to me that if what the Court of Appeals said was proper when Judge Mukasey said it, then it is still proper now on the issue of prudence...." (Tr. 1862). The court, however, reserved a final ruling.
 
 
 14
 The following day, September 26, Judge Haight decided to excise the unsettledness language from the jury charge. He stated that his reason was "not so much because there was not the degree of evidence about uncertainty at this trial that there was at the first trial, although that is a part of my reasoning." Rather, he said, his ruling on the § 507(b) issue made the state of the law irrelevant:
 
 
 15
 [H]aving held, as I have held, that the automatic making of the motion, no matter what its outcome, would have not automatically conferred superpriority status upon the claim, it follows that the uncertainty in the evidence at the first trial went to a point which would have made no difference under my 507(b) ruling, and therefore there is and cannot be, if my ruling is correct, and for the moment at least it is, no causal connection between the point at issue and the eventual outcome.
 
 
 16
 (Tr.2072). The Bondholders noted their objection to the court's ruling.
 
 
 17
 As ultimately charged by the court, the instructions to the jury regarding the application of the prudent man standard contained no statement regarding the unsettled state of the law on superpriority claims. Rather, the charge stated, in pertinent part, the following:
 
 
 18
 So, if the bankruptcy court grants the adequate protection motion or so orders an adequate protection motion, and that protection proves insufficient, the creditor is entitled to a superpriority claim. If the bankruptcy court denies the adequate protection motion or refuses to so order an adequate protection stipulation, the creditor is not entitled to a superpriority claim.
 
 
 19
 (Tr. 2343.)
 
 
 20
 The jury returned a special verdict finding that the Trustees had not breached their obligation of prudence and, in accordance with the instructions given, did not address any other issues. Consistent with this verdict, the district court entered judgment for the defendant Trustees on September 29, 2000. The plaintiffs' post-verdict motions for judgment as a matter of law or, in the alternative, for a new trial were denied, and this timely appeal followed.
 
 
 DISCUSSION
 
 
 21
 On appeal, the Bondholders principally argue that the district court's charge to the jury was incorrect because it misstated the law with respect to superpriority claims under § 507(b) of the Code.[6] Specifically, the Bondholders argue that the court should have charged that the making of a lift stay/adequate protection motion by the Trustees would have resulted in a superpriority claim under § 507(b) of the Code regardless of whether the bankruptcy court granted any additional protection or denied the motion in its entirety.
 
 
 22
 As noted, the sole issue on which the jury found for the Trustees was prudence — i.e., the jury found that the Trustees had not "acted imprudently by not making a lift stay/adequate protection motion before November 14, 1990." Thus, in order to succeed on appeal, the Bondholders must demonstrate that their argument regarding the correct interpretation of § 507(b) correctly states the law that should have been charged to the jury on the issue of prudence, and that the error on the part of the district court was not harmless. See Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir.2001).
 
 
 23
 The Bondholders' argument regarding the proper charge to the jury, however, necessarily assumes an unstated, antecedent proposition. That is, the Bondholders' argument presupposes that in determining whether the Trustees' decision not to make the lift stay/adequate protection motion sooner was prudent, the hypothetical "prudent man" (against which the Trustees' conduct must be judged) must be presumed to know the "true" legal effect of such a motion — that is, as the court (today) adjudges the law. Only if we agree with the appellants on this point does the actual effect of a lift stay/adequate protection motion become relevant to our analysis.
 
 
 24
 We cannot accept this proposition, however. We made clear in our prior opinion that Judge Mukasey's original charge regarding the unsettled state of the law — i.e., that the jury was "entitled to take this uncertainty in the law into account when [it] decide[d] whether the defendant banks acted as prudent persons in this case" — was "undoubtedly correct." LNC, 173 F.3d at 468. Our direction to the district court to determine the superpriority question as a legal matter went solely to the issue of causation, not prudence. See id. ("On remand, the district court should therefore decide the [superpriority] issue and determine what type of charge on superpriority and causation is appropriate ....") (emphasis added). With regard to prudence, as indicated by our approval of Judge Mukasey's original charge, the question is not what appears to be prudent in light of our current understanding of the law, but rather what was prudent in light of what could reasonably have been known to the Trustees at the time they allegedly should have made the motion. Even if this were not now law of the case by virtue of our prior ruling, it is compelled by logic. See Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir.1984) (prudence of trustees must be evaluated "from the perspective of the time of the ... decision rather than from the vantage point of hindsight") (internal quotation marks omitted).
 
 
 25
 The Bondholders clearly understood this at trial. They objected to the Trustees' proposal to eliminate Judge Mukasey's "unsettledness" language precisely on the ground that to do so would be to invite an evaluation of the Trustees' prudence in "hindsight," rather than addressing it as a "[then-]current-knowledge issue." Yet, on this appeal, the Bondholders have not reasserted this ground for challenging the district court's instructions, even in the alternative — instead mentioning solely the § 507(b) argument discussed above. We can only assume that this choice was not inadvertent and serves as an abandonment of the argument, pressed to the district court, that the jury should have been instructed to consider the state of the law as it was known at the time in assessing the Trustees' prudence. The strategy behind such a choice is not difficult to surmise.[7] We see no good reason not to hold the Bondholders to their choice.[8]
 
 
 26
 Because we reject the Bondholders' argument regarding the proper standard by which the Trustees' prudence should be judged, we need not determine whether the Bondholders are correct in their construction of the Bankruptcy Code.[9] Indeed, as is apparent from the foregoing discussion, because prudence is the sole issue on which the jury decided the case, and the correct interpretation of the Code is irrelevant to the issue of prudence, we would not need to address the parties' contentions regarding the Code in any case (except as we might have deemed it prudent to do so were we remanding for a third trial).[10]
 
 CONCLUSION
 
 27
 We have considered all of the appellants' arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The TIA provides that "[t]he indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c).
 
 
 [2]
 Section 363(e) provides, in relevant part, that "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The "trustee" referred to in this provision is the bankruptcy trustee (if any), whose powers can be exercised (as they were in this case) by a debtor-in-possession such as EasternSee 11 U.S.C. § 1107(a).
 
 
 [3]
 With regard to what may constitute "adequate protection," the Code states as follows:
 When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by —
 (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
 (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
 (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.
 11 U.S.C. § 361.
 
 
 [4]
 Section 507(b) provides that "[i]f the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection." 11 U.S.C. § 507(b)
 
 
 [5]
 "It would seem to me that plaintiffs would like to see [the unsettledness language] out and defendants would like to see it in, but whatever the answer to that may be, I think that it is correct, in the view that the Second Circuit has taken of the world, to include that language...." (Tr. 1865)
 
 
 [6]
 The Bondholders also challenge several of the district court's evidentiary rulings. We find none of these purported errors to be a "clear abuse of discretion" nor "so clearly prejudicial to the outcome of the trial" as to warrant a new trialPhillips v. Bowen, 278 F.3d 103, 111 (2d Cir.2002). We also find no abuse of discretion in the district court's decision not to allow the Bondholders to pursue a claim of imprudence founded on the Trustees' alleged failure to pursue an "ordinary" (i.e., non-superpriority) administrative claim in the bankruptcy court, due to the eleventh-hour raising of this theory prior to trial.
 
 
 [7]
 Both sides surely recognized that, because the state of the law was (and remains) uncertain, it is a close call whether the prudent trustee would have made a lift-stay/adequate protection motion sooner. Each side, therefore, had an incentive to have the law on superpriority construed in its favor and then to have the jurors instructed that the Trustees, in effect, should have known that was the law. Just as the Trustees, upon achieving a favorable ruling on the superpriority issue from the district court, had every incentive to avoid a jury charge with the unsettledness language, so too the Bondholders, arguing before this Court, had every incentive to attempt to gain a reversal on the superpriority issue and avoid the unsettledness charge
 
 
 [8]
 While we no doubt have the power to address an argument despite its abandonment on appeal, we ordinarily will not do so "unless manifest injustice otherwise would result."Anderson v. Branen, 27 F.3d 29, 30 (2d Cir.1994) (quotation marks omitted). It would be particularly unusual to do so where the abandonment appears, as it does here, to be a strategic choice rather than an inadvertent error. Cf. United States v. Olano, 507 U.S. 725, 733-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (distinguishing between intentional waiver and unintentional forfeiture in determining whether appellate court may address the issue under the plain-error rule). Moreover, ignoring the waiver would result not only in the expense of a third trial, but could potentially require this Court to address the difficult § 507(b) issue (either proactively now or on a third appeal) in a context — appeal from a collateral lawsuit rather than a direct appeal from a bankruptcy proceeding — that is less than ideal for resolving such an important question.
 
 
 [9]
 We also make no determination of whether Judge Haight's charge, read as a whole, was actually erroneous. Although, as stated, Judge Haight excised the "unsettledness" language from the previous charge, he did instruct the jurors that "the prudent man standard is to be applied in light of the circumstances as they existed at the time the trustee acted or did not act." This instruction was not given specifically with respect to the state of the law, however. We express no opinion as to whether, had this point not been abandoned by the Bondholders on appeal, by this charge "the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law."Girden, 262 F.3d at 203.
 
 
 [10]
 The concurrence finds it necessary to reach the § 507(b) issue because, in its view, if the district court's ruling on this point was erroneous then it improperly foreclosed the jury from finding that the Trustees' failure to make a lift stay/adequate protection motion caused the Bondholders' lossPost, at 177-79. With all due respect to our concurring colleague, we do not find this argument "waived," see post at 178, but simply disagree with it. As noted, the jury returned not a general verdict on liability but rather a special verdict on the issue of prudence only. Thus, the causation implications of the district court's § 507(b) ruling are irrelevant to this appeal unless we assume that the jury failed both to understand and to follow its instructions with respect to the distinction between the prudence and causation elements of the cause of action. The district court's instructions were quite clear on this point, and we must presume the jury to follow its instructions. See United States v. Salameh, 152 F.3d 88, 116 (2d Cir.1998) ("`[J]uries are presumed to follow their instructions.'") (alteration in original) (quoting Zafiro v. United States, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)). As the concurrence correctly notes, if the district court were to have issued an "opposite instruction" on causation under which a lift stay/adequate protection motion "alone could create eligibility for superpriority," post at 178, n. 1, and the jury were to have impermissibly elided the distinction between its prudence and causation deliberations, then "the significance of [the district court's causation] instruction on the jury's contemplation of prudence is obvious," id. (emphasis added). Our disagreement with our concurring colleague flows not from whether a jury that did not follow its instructions would have been misled but rather from a premise to that argument — whether we may presume the jury not to have followed its instructions in the first instance. The prudence issue is to be determined in light of what could reasonably have been known to the Trustees at the time they allegedly should have made the motion, not by the district court's later exposition of the law in its causation instruction, regardless of the substantive content of that instruction.
 
 
 
 28
 F.I. PARKER, Circuit Judge, concurring.
 
 
 29
 Although I agree with the majority's ultimate resolution of the case, I write separately to express the different basis on which I believe the district court's opinion should be affirmed. The majority proceeds from the premise that "in order to succeed on the appeal, the Bondholders must demonstrate that their argument regarding the correct interpretation of § 507(b) correctly states the law that should have been charged to the jury on the issue of prudence, and that the error on the part of the district court was not harmless." Because I do not agree that this statement correctly assesses the Bondholders' burden on appeal, I cannot join the analysis of the Court.
 
 I.
 
 30
 The majority's opinion suggests that the Bondholders could only win on appeal if they showed that the district court's interpretation of § 507(b) misstated the law on the issue of prudence. The majority, however, misses the point. The majority implies that a "perfect" jury instruction would have combined Judge Mukasey's instruction on prudence — that the jury could consider the unsettled state of the law at the time the Trustees made their decision in determining whether the Trustees acted prudently — with a legal ruling by the district court on causation — whether a motion to lift the stay or for adequate protection would automatically create eligibility for superpriority under § 507(b) such that the Trustees' failure to make the motion inevitably harmed the Bondholders. The district court, however, instructed the jury only on the court's determination that a motion to lift the stay or for automatic protection would not create automatic superpriority. In deciding not to give a further instruction on prudence, the district court noted that because its interpretation of § 507(b) prevented the jury from finding causation based on failure to make the motion alone, the unsettled nature of the law at the time of the Trustees' decision was basically irrelevant — even if the Trustees acted imprudently, their imprudence did not cause injury.
 
 
 31
 Unlike the majority that finds the appellants confined to arguing that the district court failed to instruct on the unsettled nature of law (a prudence question), I believe that based on the proceedings below, the appellants could argue (and in fact have argued) that the district court's ruling deprived them of the ability to argue that the Trustees' decision was not prudent since under the court's ruling, even if the Trustees acted imprudently, the jury could not find them liable as their actions alone could not have harmed the Bondholders — even if the Trustees had moved to lift the stay or for adequate protection, eligibility for superpriority would have remained uncertain, dependant on the district court's response to the motion. Thus, I believe that the Bondholders could succeed on appeal not only by "demonstrating that their argument regarding the correct interpretation of § 507(b) correctly states the law that should have been charged to the jury on the issue of prudence," but also by demonstrating that the district court misinterpreted § 507(b) such that it improperly deprived them of the ability to establish liability on the part of the Trustees.[1] Although the majority finds this argument waived by the appellants' decision to challenge explicitly only the district court's interpretation of § 507(b), I believe that any argument against the specific impact of the § 507(b) ruling on the jury's prudence and causation findings is subsumed in appellants' arguments against the trial court's interpretation of § 507(b).
 
 II.
 
 32
 Despite my determination that the majority misstates the "only" ground on which appellants might have succeeded in their appeal, I agree with the majority's ultimate decision to affirm the district court because I find that the appellants fail to demonstrate that the district court's interpretation of § 507(b) was in error. Finding the district court's instruction on § 507(b) superpriority correct, I conclude that any error in instructing the jury as to that superpriority was harmless.
 
 
 33
 Section 507(b) provides that a secured creditor may obtain superpriority status when the creditor allows continued use of collateral during bankruptcy in exchange for a promise of "adequate protection" that ultimately proves inadequate. See 11 U.S.C. § 507(b). The provision encourages creditors to "hang on" during reorganization, allowing debtors to continue to work with the resources they need to operate (and hopefully rebuild) their business enterprises. Limiting the superpriority to those creditors to whom adequate protection is granted ensures both that creditors are encouraged to take on additional risk or to withstand existing risk (i.e. when they do not have other protection like an equity cushion) in order to allow a debtor to continue operations, and that the number of creditors promised a superpriority status is limited so that post-bankruptcy suppliers will not be deterred from continued support of the business in bankruptcy by the long line of "supercreditors" behind which new claims would fall. See Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 867 (4th Cir.1994); In re James B. Downing & Co., 94 B.R. 515, 519 (Bankr.N.D.Ill. July 20, 1988). Additionally, several cases exploring near this issue suggest that while a court's express finding of pre-existing adequate protection might allow a creditor to invoke § 507(b) superpriority without the grant of a motion to lift stay or for adequate protection, in the absence of such an explicit finding, superpriority is not available. See Vincent Props., Inc. v. Five Star Partners (In re Five Star Partners, L.P.), 193 B.R. 603, 612 (Bankr. N.D.Ga.1996); In re Downing, 94 B.R. at 520; see also Ford Motor Credit Co., 35 F.3d at 867 (rejecting "opportunity" to use collateral as sufficient for § 503(b) claim); Cheatham v. Cent. Carolina Bank & Trust Co. (In re Cheatham), 91 B.R. 382, 387 (E.D.N.C.1988) (noting different result if court found, after hearing, adequate protection and denied motion on that basis).
 
 
 34
 Judge Haight's interpretation of § 507(b) also fits well the language of the statute ("If the trustee ... provides"), 11 U.S.C. § 507(b), and the narrow construction normally afforded statutory priorities in bankruptcy law, see Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 867 (4th Cir. 1994); In re Downing, 94 B.R. 515, 519 (Bankr.N.D.Ill.1998); see also 4 COLLIER ON BANKRUPTCY ¶ 507.12[1][a] (requiring that a "trustee must have affirmatively provided adequate protection to the creditor" to qualify for superpriority status).
 
 
 35
 Having concluded that Judge Haight's interpretation of § 507(b) is correct, I understand his conclusion that in light of his ruling on § 507(b), no further jury instruction on the state of the law for a prudence assessment was necessary. If a motion for lift stay/adequate protection alone would not have entitled the Bondholders to superpriority status (the court would have had to grant the motion), the jury could not have concluded that the failure to make such a motion caused the Bondholders to "lose" superpriority status. While the majority may be correct that the failure to instruct the jury that the law was uncertain at the time of the Trustees' decision was error, any such error is made harmless by a limited reading of § 507(b). On this basis, I would affirm the decision of the district court and thus concur in the judgment of the majority.
 
 
 
 Notes:
 
 
 [1]
 The majority rightfully notes that had the Trustees filed a motion to lift the stay or for adequate protection that was granted, the Bondholders would have been eligible for superpriority. In this case, however, the district court instructed the jury only on the legal result of bringing a motion to lift stay or for adequate protection, i.e., that the motion alone would not create eligibility for superpriority. The significance of this instruction on the jury's contemplation of prudence is obvious when one considers the logical impact of an opposite instruction: If the court had told the jury, as the Bondholders requested, that a motion to lift stay or for adequate protection alone could create eligibility for superpriority, the Trustees' failure to make the motion would appear clearly imprudent, since the motion itself could have protected the Bondholders no matter how the bankruptcy court decided the motion. Viewed under the interpretation the Bondholders advance on appeal, the Trustees' failure to make such a motion would appear a clear decision not to take steps that would have inevitably protected the Bondholders
 The district court, however, instructed the jury that a motion would not have inevitably produced superpriority, making the Trustees' decision not to file appear less clearly imprudent. Thus, even assuming that the jury followed instructions, properly evaluating prudence and causation separately, the Bondholders may legitimately argue that the district court's instruction on its substantive interpretation of § 507(b) impacted their ability to establish liability by directing the jury's contemplation of the wisdom of the Trustees' choice not to file a motion to lift stay or for adequate protection sooner.