07-5243-cv
Coalition on West Valley Nuclear Wastes v. Bodman

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: March 9, 2009)                    Decided: August 31, 2009)

Docket No. 07-5243-cv

————————

COALITION ON WEST VALLEY NUCLEAR WASTES,
JOANNE E. HAMEISTER,

*Plaintiffs-Appellants*,

– v.–

STEVEN CHU,[*] SECRETARY, DEPARTMENT OF ENERGY,
UNITED STATES OF AMERICA,

*Defendants-Appellees*.

————————

Before:  WALKER and LIVINGSTON, *Circuit Judges*, and KAPLAN, *District Judge*.[**]

————————

The Coalition on West Valley Nuclear Wastes and Joanne E. Hameister contend that

the United States Department of Energy ("DOE") violated both the National Environmental Policy

Act, 42 U.S.C. § 4321 *et seq.*, and the terms of a 1987 settlement between the Coalition and the DOE

by issuing an environmental impact statement concerning waste management activities at the West

---

[*]      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of Energy Steven Chu is automatically substituted for former Secretary of Energy Samuel Bodman.

[**]      Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

Valley Project site, a portion of the Western New York Nuclear Service Center, that did not address long-term closure issues regarding the rest of the Center. The district court granted summary judgment in favor of the Department on all claims.

AFFIRMED.

–––––––––––

ROBERT E. KNOER, The Knoer Group, PLLC, Buffalo, N.Y., *for Plaintiffs-Appellants*.

TAMARA N. ROUNTREE, Attorney (Mary K. Roach, Stacey Bosshardt, Lisa Jones Foose, Ann Peterson, United States Department of Justice; Janet Masters, P. Benjamin Underwood, United States Department of Energy, *of counsel*), *on behalf of* Ronald J. Tenpas, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., *for Defendants-Appellees*.

–––––––––––

DEBRA ANN LIVINGSTON, *Circuit Judge*:

The Western New York Nuclear Service Center ("Center") is located approximately thirty miles southeast of Buffalo, New York. It began operation in 1966 as a commercial nuclear fuel reprocessing plant, operated by a private contractor, Nuclear Fuel Services ("Nuclear Fuel Services"), for the purpose of recovering uranium and plutonium from spent nuclear fuel. The reprocessing plant, which is the only one of its kind ever to operate in the United States, was closed for improvements in 1972 and ultimately did not reopen as a commercial enterprise. Nuclear Fuel Services withdrew from the business and yielded responsibility for the plant to what is now known as the New York State Energy Research and Development Authority ("NYSERDA"), which owns and maintains the 3345-acre Center to this day.

Following the withdrawal of Nuclear Fuel Services, Congress ordered a study of possible federal operation of the Center, and ultimately authorized the U.S. Department of Energy ("DOE") to carry out a high-level liquid nuclear waste management demonstration project ("West Valley Project") there. *See* West Valley Demonstration Project Act, Pub. L. No. 96-368, 94 Stat. 1347 (1980) ("WVDP"); Department of Energy Act of 1978, Pub. L. No. 95-238, § 105, 92 Stat. 47, 53-54. The reprocessing that took place at the Center between 1966 and 1972 produced waste that was stored on-site in underground storage tanks or buried in designated waste burial sites. The West Valley Project was designed to demonstrate solidification techniques that could be used to prepare such waste for transportation to and disposal in a suitable repository. Congress also authorized the DOE to transport solidified waste from the Center to an appropriate repository, to dispose of low-level waste generated as a result of the solidification process, and to decontaminate and decommission the facilities and materials employed during reprocessing and in the Project. WVDP,§ 2(a), 94 Stat. at 1347.

After the WVDP was enacted in 1980, NYSERDA made approximately 200 acres of the Center available for the West Valley Project. The Project site, which includes a chemical reprocessing plant, a spent nuclear fuel receiving and storing area, and liquid storage tanks, consists primarily of the facilities originally constructed and operated by Nuclear Fuel Services to reprocess spent nuclear fuel. Pursuant to the WVDP, the DOE manages the 200-acre site, to which the State of New York retains title, while the State maintains possession of the remaining portion of the Nuclear Service Center. Using a solidification process that converts the liquid waste into glass, the DOE has treated 600,000 gallons of high-level liquid nuclear waste at the Project site, emptying the Project area's on-site, underground, high-level waste storage tanks of the vast majority of their long-

lived radioactivity.

Litigation first commenced in 1986, as a result of the Department's proposal for the storage of drums of purportedly low-level waste on the Project site in an engineered disposal area. The Coalition on West Valley Nuclear Wastes ("Coalition"), one of the Plaintiffs-Appellants in this case, brought suit under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, arguing that the Department was required to prepare an Environmental Impact Statement ("EIS") regarding the proposal. The parties settled that lawsuit by means of a Stipulation of Compromise dated May 27, 1987. The DOE noted therein that it had planned to prepare an EIS concerning closure for the post-solidification phase of the West Valley Project and it agreed that the "closure Environmental Impact Statement process [would] begin no later than 1988" and proceed "without undue delay and in an orderly fashion consistent with applicable law, the objectives of the West Valley Demonstration Project, available resources and mindful of the procedural processes (including public input) needed to complete the aforesaid Environmental Impact Statement."

The following year, the DOE issued a notice of its intent to prepare an EIS "for Completion of [the] West Valley Demonstration Project Activities and Closure of the Western New York Center." 53 Fed. Reg. 53,052 (Dec. 30, 1988). The Department and NYSERDA, as joint lead agencies, together issued a draft EIS in 1996 evaluating the environmental impact of various alternatives for closure or long-term management of the entire 3345-acre Nuclear Service Center. Disagreements developed between the DOE and NYSERDA, however, as to future aspects of the Center, so that the 1996 draft EIS never became final. In March, 2001, the two agencies issued a public notice announcing that they had decided to bifurcate the EIS process into two stages. *See* DOE, Revised Strategy for the Environmental Impact Statement for Completion of the West Valley

-4-

Demonstration Project and Closure or Long-Term Management of Facilities at the Western New York Nuclear Service Center and Solicitation of Scoping Comments, 66 Fed. Reg. 16,447 (Mar. 26, 2001). The first stage would address specific, short-term waste-management activities for the 200-acre West Valley Project. *See id.* at 16,447. The second stage would cover the long-term closure and management of the Center. *See id.* The Department has asserted that this approach permits it "to make decisions regarding transportation of waste for offsite disposal and to implement those decisions while undertaking the process of making long-term closure or stewardship decisions with the [NYSERDA] and federal and state regulators." In 2003, it issued a new EIS, the Waste Management EIS, addressing only short-term, waste management activities for the West Valley Project. On June 16, 2005, it entered a record of decision, selecting a course of action from among those proposed in the Waste Management EIS. *See* U.S. Dep't of Energy, West Valley Demonstration Project Waste Management Activities, 70 Fed. Reg. 35,073 (June 16, 2005) [hereinafter Record of Decision].

Shortly thereafter, the Coalition, an association formed to participate in developing a plan for disposal of the West Valley nuclear wastes, and Joanne E. Hameister, a resident of East Aurora, New York, filed this suit, challenging the Waste Management EIS. In their view, the DOE violated both NEPA and the 1987 settlement between the Coalition and the DOE by not issuing a single EIS that deals with the entire 3345-acre Nuclear Service Center. In addition, the Department's record of decision affirms that the DOE will ship low-level radioactive waste ("LLW") and mixed radioactive and hazardous low-level waste ("MLLW") from the West Valley Project for disposal. The Appellants also challenge the DOE's authority to reclassify wastes as LLW or MLLW "pursuant to a waste incidental to reprocessing evaluation process." The district court granted summary

judgment in favor of the Appellees on all claims, *see Coal. on W. Valley Nuclear Wastes v. Bodman*, No. 05-cv-0614, 2007 WL 2892628 (W.D.N.Y. Sept. 28, 2007), and for the reasons that follow, we affirm.[1]

\* \* \*

As we have noted, "NEPA requires a federal agency to prepare an EIS before taking any major action 'significantly affecting the quality of the human environment.'" *Stewart Park & Reserve Coal., Inc.* (*SPARC*) *v. Slater*, 352 F.3d 545, 557 (2d Cir. 2003) (quoting 42 U.S.C. § 4332(2)(C)). "NEPA is a procedural statute that mandates a process rather than a particular result." *Id.* "The agency must involve the public in the NEPA review process and consider the views of other interested federal, state, and local entities in making its decision." *Pogliani v. U.S. Army Corps of Eng'rs*, 306 F.3d 1235, 1237-38 (2d Cir. 2002) (citing 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1506.6). "The only role for a [reviewing] court is to insure that the agency has taken a 'hard look' at environmental consequences; it cannot 'interject itself within the area of discretion of the executive as to the choice of the action to be taken.'" *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1029 (2d Cir. 1983) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976)). The reviewing court cannot "rule an EIS inadequate if the agency has made an adequate compilation of relevant information, has analyzed it reasonably, has not ignored pertinent data, and has made disclosures to the public." *Id.* (footnote omitted).

Appellants principally raise two related complaints to the DOE's Waste Management EIS. They argue that under the Council on Environmental Quality's ("CEQ") NEPA regulations,

---

[1]     The United States raised no objection to the standing of the Appellants, so we do not set forth our standing analysis in this opinion. We note that we have satisfied ourselves based on a review of the record that the nonwaivable jurisdictional requirements have been met.

it was impermissible "segmentation" for the Department not to consider overall closure issues for the entire 3345-acre Nuclear Service Center at the same time that it considered the waste management issues for the 200-acre West Valley Project. In the alternative, Appellants contend that, once DOE issued a draft EIS in 1996, it could not later split that EIS into two separate stages.

First, we conclude that separating the consideration of the waste management and the closure issues was not impermissible segmentation. "Segmentation is an attempt to circumvent NEPA by breaking up one project into smaller projects and not studying the overall impacts of the single overall project." *SPARC*, 352 F.3d at 559. But the CEQ's regulations implementing NEPA make clear that not all agency decisions to break a project into stages are impermissible segmentation. To the contrary, agencies must often undertake multi-faceted actions that have complex, interdependent environmental impacts; the agency must make reasonable judgments about what actions should be analyzed together and what should be analyzed separately.

To help agencies make such judgments, "the [CEQ] has issued regulations that determine when actions are considered '[c]onnected, . . . which means that they are closely related and should be discussed in the same impact statement.'" *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 836 F.2d 760, 763 (2d Cir. 1988) (per curiam) (quoting 40 C.F.R. § 1508.25(a)(1)); *see also Town of Huntington v. Marsh*, 859 F.2d 1134, 1142 (2d Cir. 1988) ("CEQ guidelines provide that proposals should be included in the same EIS if they are 'connected,' that is, if they are 'closely related' . . . ." (quoting 40 C.F.R. § 1508.25(a)(1)(iii))). The regulations provide that

> [a]ctions are connected if they:
> (i) Automatically trigger other actions which may require environmental impact statements.
> (ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.
> (iii) Are interdependent parts of a larger action and depend on

the larger action for their justification.

40 C.F.R. § 1508.25(a)(1). In addition, even if not otherwise connected, cumulative actions, i.e. those actions "which when viewed with other proposed actions have cumulatively significant impacts," should be discussed in the same impact statement. *Id.* § 1508.25(a)(2). Agencies should also "analyze [similar] actions in the same impact statement . . . when the best way to assess adequately the combined impacts of similar actions or reasonable alternatives to such actions is to treat them in a single impact statement." *Id.* § 1508.25(a)(3).

Regarding whether waste management activities at the Project site are "connected" to the Center's overall closure plans for the purpose of 40 C.F.R. § 1508.25(a), Appellants have not identified any way in which the waste management activities that the DOE contemplates will automatically trigger closure of the Nuclear Service Center, nor have they persuasively argued that the waste management activities cannot proceed without closure. We thus agree with the district court that neither of these grounds presents a basis for concluding that the waste management actions are "connected" to the closure actions. *See Coal. on W. Valley Nuclear Wastes*, 2007 WL 2892628, at *8. Appellants seem to argue only that the actions that the DOE has undertaken here are "interdependent parts of a larger action and depend on the larger action for their justification." 40 C.F.R. § 1508.25(a)(1)(iii).

But the waste management activities that the Department is undertaking do not "depend on the [closure action] for their justification," and we therefore reject this argument as a ground for finding the waste management actions to be "connected" to the closure action. "The proper test to determine relatedness under 40 C.F.R. § 1508.25(a)(1)(iii) is whether the project has independent utility." *Marsh*, 859 F.2d at 1142 (citing *Hudson River Sloop Clearwater, Inc.*, 836

F.2d at 764). The DOE's final Record of Decision on the Waste Management EIS indicates that its waste management actions entail shipping certain kinds of waste off-site and storing high-level waste at the West Valley site until it can be shipped to a geologic repository. *See* Record of Decision, 70 Fed. Reg. at 35,077. As the district court found, removing the waste from the site has "independent utility," for instance in storing the waste more safely, regardless of whether the Center as a whole is closed or decommissioned. Appellants have failed to present any evidence that would suggest that dealing in a more permanent fashion with waste that is currently left on the Project site somehow depends on closing the entire Center for its justification. Thus, we agree with the district court's conclusion that the waste management actions are not "connected" to the closure actions. *See Coal. on W. Valley Nuclear Wastes*, 2007 WL 2892628, at \*8-9. We also perceive no basis in the record for concluding that the actions are either cumulative in character, yielding cumulative environmental impacts that should be discussed in the same EIS, *see* 40 C.F.R. § 1508.25(a)(2), or that they are so similar that the "best way to assess adequately the combined impacts . . . is to treat them in a single impact statement," *id.* § 1508.25(a)(3).

The Department likewise acted within its discretion when it "descoped" or "rescoped" the EIS process, revising its approach to NEPA and splitting the issues that had been treated in one draft EIS in 1996 into two stages, for treatment in separate statements.[2] CEQ's regulations plainly

---

[2]    Federal agencies appear to use the term "descope" to refer to splitting an existing EIS process into two separate EISs. *See, e.g.*, Nuclear Regulatory Comm'n, Decommissioning Criteria for the West Valley Demonstration Project (M-32) at the West Valley Site; Final Policy Statement, 67 Fed. Reg. 5003, 5005 n.8 (Feb. 1, 2002) ("DOE has decided to descope the draft 1996 EIS into two separate EISs."). They appear to use the term "rescope" to refer generally to any change to any existing EIS. *See, e.g.*, Nuclear Regulatory Comm'n, Decommissioning of Sequoyah Fuels Corporation Uranium Conversion Facility in Gore, Oklahoma: Notice of Intent To Conduct a Public Rescoping Meeting for Sequoyah Fuels Uranium Conversion Facility, 68 Fed. Reg. 20,033 (Apr. 23, 2003) ("[NRC] is holding this rescoping meeting to discuss changes

contemplate that agencies can change the scope of the issues to be considered in a given EIS. *See* 40 C.F.R. § 1501.7(c) ("An agency shall revise [scoping] determinations . . . if significant new circumstances or information arise which bear on the proposal or its impacts."). Here, the DOE issued public notice of its intention to change the scope of the EIS, and held a public scoping meeting. *See* DOE, Revised Strategy for the Environmental Impact Statement for Completion of the West Valley Demonstration Project and Closure or Long-Term Management of Facilities at the Western New York Nuclear Service Center and Solicitation of Scoping Comments, 66 Fed. Reg. 16,447, 16,447, 16,450 (Mar. 26, 2001). Agencies have wide discretion to change the scope of an EIS as "significant new circumstances or information arise," 40 C.F.R. § 1501.7(c), and DOE acted well within its discretion here.

We also agree with the district court that the 1987 stipulation entered between the parties did not in any way "curtail[] DOE's ability to reevaluate its strategy for completing environmental impact review in response to comments and concerns raised after publication of the [1996] draft [EIS]." *Coal. on W. Valley Nuclear Wastes*, 2007 WL 2892628, at *12. The only language that Appellants have identified in support of their argument that the stipulation restricts the Department's authority to change the scope of its environmental impact analysis is a paragraph in which the parties agreed

> that the closure Environmental Impact Statement process — including the scoping process — shall begin no later than 1988 and that this process shall continue without undue delay and in an orderly fashion consistent with applicable law, the objectives of the West Valley Demonstration Project, available resources and mindful of the procedural processes (including public input) needed to complete the aforesaid Environmental Impact Statement.

to the EIS that may be needed . . . .").

But at least so far as the question of changing the scope of a draft environmental impact statement is concerned, this paragraph unambiguously does not purport to restrict the DOE from doing anything that is otherwise lawful under NEPA. And the Appellants have failed to put forth any persuasive evidence suggesting that the decision to consider environmental impacts in two stages resulted in any "undue delay."

The requirement that DOE proceed in an "orderly fashion consistent with applicable law" — the principal focus of Appellants' argument — merely incorporates into the stipulation an obligation for the Department to do what it was required to do anyway, i.e. follow the applicable law, which, as Appellants concede, is merely NEPA itself. In other words, Appellants can only prove a breach of this provision of the stipulation if they can demonstrate that DOE's actions would have violated NEPA even if there had been no stipulation between the parties — which, for the reasons above, Appellants cannot do. This provision of the stipulation does not restrict the DOE to any greater extent than NEPA does, and to the extent that Appellants claim a breach of the stipulation, independent of their NEPA claim, that claim fails.

Appellants lastly contend — in a four-sentence section of their brief — that DOE violated the law in some way by stating in its Record of Decision that the determination to ship certain wastes off-site for disposal "includes wastes DOE may determine in the future to be LLW or MLLW pursuant to a waste incidental to reprocessing by evaluation process." Record of Decision, 70 Fed. Reg. at 35,077. The sole analysis in Appellants' opening brief on appeal on this topic is as follows: "Such a category of waste is not recognized under the West Valley Demonstration Project Act. In addition, the EIS pursuant to which this Record of Decision was reached did not incorporate a review of the environmental impact of such a WIR evaluation."

Appellants' Br. at 26. The district court treated this issue as a claim that DOE did not have authority to reclassify waste and rejected the claim as unripe. *See Coal. on W. Valley Nuclear Wastes*, 2007 WL 2892628, at *12-13 (following *Natural Res. Defense Council v. Abraham*, 388 F.3d 701, 707 (9th Cir. 2004)). At oral argument, Appellants seemed to argue that their challenge was really one to the adequacy of the environmental impact analysis of reclassifying waste, but the Appellants' reply brief seems to characterize the claim as a challenge to the DOE's authority. *See* Reply Br. at 13 ("It is the *authority* to even create such a reclassification process that the Coalition has objected to.").

We find that Appellant's two-sentence legal analysis in their opening brief is insufficient to preserve this issue for appellate review. *See Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."); *see also LNC Invs., Inc. v. Nat'l Westminster Bank, N.J.*, 308 F.3d 169, 176 n.8 (2d Cir. 2002) (noting that the court of appeals ordinarily will not address issues abandoned on appeal unless manifest injustice would result). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). Since Appellants failed to develop their argument in any meaningful way and the district court regarded the issue as unripe for decision and therefore did not reach the merits, "prudence dictates that we not decide this question based on such scant

argumentation." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 224 (1997).

We have considered all of Appellants' remaining contentions and find them to be without merit.  Consequently, the judgment of the district court is AFFIRMED.