*PIMLICO, LLC v. Commissioner of Internal Revenue*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of August, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> AMALYA L. KEARSE,
> > *Circuit Judge*,
> J. PAUL OETKEN,
> > *District Judge.*\*

_____

PIMLICO, LLC,

> *Petitioner-Appellant*,

v.                                                            24-1982

COMMISSIONER OF INTERNAL REVENUE,

> *Respondent-Appellee.*\*

_____

---

\* Judge Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

\* The Clerk is respectfully directed to amend the caption.

For Petitioner-Appellant:  JEREMY H. TEMKIN (Christian B. Ronald, Edward N. Spiro, *on the brief*), Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY.

For Respondent-Appellee:  JENNIFER M. RUBIN (Norah E. Bringer, *on the brief*), United States Department of Justice Tax Division, Appellate Section, Washington, D.C.

Appeal from a judgment of the United States Tax Court (Gale, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the Tax Court is **AFFIRMED**.

Petitioner-Appellant PIMLICO, LLC ("PIMLICO") appeals a final decision entered by the U.S. Tax Court (Gale, *J.*), upholding adjustments by the Commissioner of the Internal Revenue Service ("IRS") to the ordinary income of PICCIRC, LLC, of which PIMLICO was a member. PICCIRC attempted to claim a $22.7 million tax loss from its sale of distressed trade receivables, called *duplicatas*. Santa Bárbara Indústria e Comércio de Ferro Ltda. ("Santa Bárbara"), a Brazilian company, had originally contributed the *duplicatas* to XBOXT, LLC ("XBOXT"), a member of PIMLICO. XBOXT contributed most of these receivables to PIMLICO which, in turn, contributed them to PICCIRC. PICCIRC then sold the *duplicatas* at a loss. The tax court determined PICCIRC was not entitled to claim the tax loss because, *inter alia*, Santa Bárbara's contribution of the *duplicatas* was actually a disguised sale. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to **AFFIRM.**

We review the legal conclusions of the Tax Court *de novo* and its factual findings for clear error. *Soni v. Comm'r*, 76 F.4th 49, 57 (2d Cir. 2023). A factual finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

*Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation omitted). On appeal, PIMLICO argues that the Tax Court erred in applying the presumption of a disguised sale and in concluding that PIMLICO did not present facts rebutting the presumption. For the following reasons, we disagree.

Generally, partnership contributions and distributions are not taxed. 26 U.S.C. §§ 721(a), 731(a). In contrast, a partner who sells an asset to a partnership is not considered to be acting in its capacity as a partner, and therefore the sale is taxed. *See id.* § 707(a)(1), (2); *Va. Historic Tax Credit Fund 2001 LP v. Comm'r*, 639 F.3d 129, 138–39 (4th Cir. 2011). The distinction between sales and contributions for tax purposes is "susceptible to manipulation by persons wishing to shield transactions that are more accurately characterized as sales from their proper tax consequences." *Va. Historic*, 639 F.3d at 138. To prevent such manipulation, Treasury regulations clarify when a contribution, followed by a subsequent transfer of consideration, in effect, operates as a disguised sale. *Route 231, LLC v. Comm'r*, 107 T.C.M. (CCH) 1155, 2014 WL 700397, at *11–12 (T.C. 2014), *aff'd*, 810 F.3d 247 (4th Cir. 2016); *see* 26 U.S.C. § 707(a)(2)(B). A contribution is taxed as a sale if, "based on all the facts and circumstances," 1) the transfer "of money or other consideration would not have been made but for the transfer of property," and 2) if the transfers are not made simultaneously, "the subsequent transfer is not dependent on the entrepreneurial risks of partnership operations." 26 C.F.R. § 1.707-3(b)(1). If the alleged contribution and distribution are made within a two-year period, "the transfers are *presumed* to be a sale of the property to the partnership unless the facts and circumstances clearly establish that the transfers do not constitute a sale." *Id.* § 1.707-3(c)(1) (emphasis added).

The Tax Court correctly determined that the presumption of a disguised sale is applicable here. Santa Bárbara contributed the *duplicatas* to XBOXT in August 2002. XBOXT then

3

contributed these *duplicatas* to PIMLICO, which contributed them to PICCIRC. On the day PIC-CIRC was created, John Howard, a U.S. investor, joined PIMLICO by purchasing part of XBOXT's interest in the partnership for $300,164, a transaction reflected in XBOXT's bank account records. On December 16, 2002, Santa Bárbara requested to partially withdraw its interest in XBOXT for $300,164. By January 31, 2003, XBOXT's bank account no longer reflected the $300,164 it had received from Howard. The natural inference from this evidence is that XBOXT transferred the $300,164 it received from Howard to Santa Bárbara. Accordingly, the contribution and distribution were made within two years. Because PIMLICO did not object below to the records the Tax Court relied on to reach this conclusion, it has waived its evidentiary challenges to the Tax Court's presumption of a disguised sale. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011).[1]

We next turn to whether the relevant facts and circumstances rebut the presumption of a disguised sale. Some relevant facts tending to show a disguised sale include: 1) whether the contributing partner has "a legally enforceable right to the subsequent transfer"; 2) whether any person made contributions that "permit the partnership to make the transfer of money" to the contributing partner; 3) whether the "partnership distributions, allocation or control of partnership operations is designed to effect an exchange of the burdens and benefits of ownership of property"; 4) whether the "transfer of money . . . by the partnership to the partner is disproportionately large in relationship to the partner's general and continuing interest in partnership profits"; and 5) whether "the partner has no obligation to return or repay the money or other consideration to the partnership."

---

[1] PIMLICO has abandoned any claims of plain error, as it only dedicated one sentence—in a footnote—to the argument in its opening brief. *Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) (concluding that a "two-sentence legal analysis in [an] opening brief is insufficient to preserve [an] issue for appellate review").

26 C.F.R. §§ 1.707-3(b)(2)(ii), (iv), (viii), (ix), (x). These facts are by no means exclusive or determinative. *See id.* § 1.707-3(b)(2). Some facts may be irrelevant in a particular context. *See Superior Trading, LLC v. Comm'r*, 103 T.C.M. (CCH) 1604, 2012 WL 1319748, at *11 n.13 (2012), *aff'd*, 728 F.3d 676 (7th Cir. 2013). Other facts not enumerated in the regulations, such as the "transitory" status of a contributing partner, can also support finding a disguised sale occurred. *See Va. Historic*, 639 F.3d at 138, 144.

The Tax Court did not err in concluding that the facts and circumstances here did not rebut the presumption of a disguised sale. As the relevant bank account records demonstrate, Howard's contribution of $300,164 to XBOXT permitted the partnership to make a transfer of money to Santa Bárbara. *See Buyuk LLC v. Comm'r*, 106 T.C.M. (CCH) 502, 2013 WL 5942309, at *21 (T.C. 2013) (concluding a disguised sale occurred, in part because "[t]he cash distributions [to the contributing partner] were entirely funded by money provided by [U.S. taxpayers]"). And because Santa Bárbara partially withdrew from XBOXT by selling its interest for $300,164, the transfer was disproportionate to its continuing interests in the partnership. *See Superior Trading*, 2012 WL 1319748, at *11 n.13 (finding a disguised sale occurred where a partner was "redeemed out of the . . . partnership as a consequence of the cash payments"). The close timing between the creation of the partnership, Howard's purchase of an interest in XBOXT, and Santa Bárbara's partial sale of its interest in XBOXT—for the *same exact sum*—was not mere coincidence. As the Tax Court observed, these actions had the effect of engineering a tax windfall for Howard.[2]

---

[2] Prior to 2004, Treasury regulations allowed a new partner to buy an existing partner's interest—and, in so doing, claim the built-in loss from the asset the existing partner had contributed. *See* 26 U.S.C § 704(c)(1)(B) (2004); 26 C.F.R. § 1.704-3(a)(7) (2004). By purchasing XBOXT's interest, then, Howard became entitled to the tax loss XBOXT would have claimed from PICCIRC's sale of the *duplicatas* it contributed. 26 U.S.C. § 704(c)(1)(B) (2004) (entitling a partner who contributed an asset to the partnership to the tax loss from its sale); 26 C.F.R. § 1.704-3(a)(7) (2004). This loophole was eliminated by

Viewed in this light, "[t]he circumstances surrounding Santa Bárbara's partial redemption of its XBOXT interest suggest that it was a preconceived step" to shift the benefits of ownership of the *duplicatas*—vis-á-vis tax loss—to Howard.    SPA-7; 26 C.F.R. § 1.707-3(b)(2)(viii); *Buyuk*, 2013 WL 5942309, at \*20–24 (determining a disguised sale occurred based on a similar timeline and scheme).

PIMLICO fails to offer an alternate explanation for this account activity, instead pointing to certain facts and circumstances that are not present here.    Although PIMLICO is correct to note that Santa Bárbara's contribution agreement evinced no right to the distributions and that the partnership did not take on debt to pay Santa Bárbara, 26 C.F.R. § 1.707-3(b)(2)(ii), (vi), these facts are not inconsistent with the existence of a disguised sale.    *See Buyuk*, 2013 WL 5942309, at \*20–24 (concluding a disguised sale occurred even though the contributing partner never had a legally enforceable right to the distribution).    Treasury regulations make clear that the delineated "facts and circumstances" are guiding inquiries and are not factors to "tick through . . . mechanically." *Va. Historic*, 639 F.3d at 144; *see* 26 C.F.R. § 1.707-3(b)(2).    Accordingly, the Tax Court did not clearly err in finding that the "distribution" of money to Santa Bárbara would have not occurred but for the transfer of the *duplicatas* and was independent of the entrepreneurial risks of the partnership.    *See* SPA-7–8; 26 C.F.R. § 1.707-3(b)(1).

\*        \*        \*

---

statute after the relevant events of this appeal.    American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 833, 118 Stat. 1418, 1589 (2004) (codified as amended at 26 U.S.C § 704(c)(1)(C)).

We have considered PIMLICO's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the Tax Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court